UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

IN RE:

| | |
|---|---|
| LESLIE HOWARD ROBERTS, JR.<br>SILVIA CASTRO ROBERTS,<br>DEBTORS.<br>_____________________________ / | CASE NO.: 11-39825 LMI<br>CHAPTER 7 |
| Leslie Howard Roberts, Jr. and<br>Silvia Castro Roberts,<br>Plaintiffs/ Counter-defendants | Adv. Case No. 13-01140 LMI |

v.

Edmundo Gugliotta
Defendant/Counter-plaintiff

**MOTION FOR SUMMARY JUDGMENT AS TO ISSUE OF DISCHARGABILITY**

Defendant/Counter-Plaintiff, Edmundo Gugliotta, moves for summary judgment as to the issue of dischargability, and states:

Debtors are repeat perpetrators of frauds, including the fraud that has injured Mr. Gugliotta. *See* Affidavit of Edmundo Gugliotta attached hereto as **Exhibit "A."** The Sixth Circuit cited the Eleventh Circuit in *Birmingham Trust Nat'l Bank v. Case, 755 F.2d 1474 (11th Cir. 1985)* which "explained that the bankruptcy laws are designed to provide relief to the "honest, but unfortunate debtor," not the

dishonest one. *Id.* Holding that the entire amount of a fraudulently-obtained debt is nondischargeable not only ensures that the dishonest debtor will gain no benefit from his fraudulent conduct, but also fulfills the congressional purpose of punishing him for that conduct. *Id.*" Ameritrust Company v. Rudicil 1992 U.S. App. Lexis 33323 (6th Cir. 1992). These debtors clearly are not honest unfortunate debtors. They are dishonest ones. It is consistent with congressional intent to deny these dishonest debtors their discharge.

Both these debtors participated in the knowing sale of counterfeit and forged art to Mr. Gugliotta. They assured him the art was genuine and original. They provided him with written assurances that the art was genuine and original. They forged the Certificates of Authenticity that accompanied the art.

11 USC Section 523 provides, in pertinent part, as follows:

§ 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

. . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

The debt at issue here is for money that was received by the debtors through false representation that the art at issue was genuine original Peter Max art. This was an actual fraud. The act of obtaining money through the sale of forged art is larceny by trick and Larceny by Fraud. Therefore the debt is not dischargeable.

This is not a close case. Not only did the joint debtors sell forged art to Mr. Gugliotta, but they did so after having previously been sued for selling forged and counterfeited art and agreeing to injunction to prohibit them from doing so again (albeit, the injunction was limited to Romero Britto art). Furthermore, one of this husband wife team of rip off artists was previously convicted on mail fraud in connection with the sale of securities and sentenced to a 15 year term of incarceration. In other words, they did not learn. Prior criminal proceedings did not teach them not to commit fraud. A prior civil suit did not teach them not to commit fraud. Perhaps a denial of a discharge may begin to work the education that is needed.

WHEREFORE, Gugliotta asks that the debt owed to him be exempt from discharge and that he be awarded his fees and costs incurred in connection with this proceeding.

Respectfully Submitted,

By________________________________

Dirk Lorenzen, Esq.
Florida Bar No. 821276
150 Alhambra Circle, Suite 1220
Coral Gables, Florida 33134
(305) 447-1203
(305) 447-1272 (facsimile)
eservice.lorenzenlaw@gmail.com
dirk@lorenzenlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished by email to **Mark S. Steinberg, Esq.,** 9400 South Dadeland Blvd. Penthouse Five, Miami, FL 33156, at mss@steinberglawoffices.com and mss25@juno.com, and Drew M. Dillworth, Trustee, ddilworth@swmwascom by email and CM/ECF, on this, on this **29th** day of April, 2013.

________________________________
**Dirk Lorenzen, Esq.**

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

IN RE:

LESLIE HOWARD ROBERTS, JR.
SILVIA CASTRO ROBERTS,
DEBTORS.
_______________________________/

CASE NO.: 11-39825 LMI
CHAPTER 7

Leslie Howard Roberts, Jr. and
Silvia Castro Roberts,
Plaintiffs/ Counter-defendants

Adv. Case No. 13-01140 LMI

v.

Edmundo Gugliotta
Defendant/Counter-plaintiff

**AFFIDAVIT OF EDMUNDO GUGLIOTTA IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO ISSUE OF DISCHARGABILITY**

1. My name is Edmundo Gugliotta. I make this affidavit on personal knowledge. I am over the age of 21, *sui juris* and competent to make this affidavit.

2. I am a collector of art in general, and Peter Max art in particular.

3. I met the debtors, Silvia Castro Roberts and Leslie Howard Roberts, Jr. in connection with my collection of Peter Max[1] art. They jointly ran an art gallery as a Husband and Wife team and they represented themselves to be in the business of selling fine original art, particularly art by Peter Max. I saw both of them at the gallery on multiple occasions.

4. I purchased Peter Max art from the Debtors. The financial aspects of the purchases were discussed with Leslie Howard Roberts Jr. They represented that it was original and genuine Peter Max art. They provided certificates of authenticity for the art they sold. Indeed, they provided two certificates, one from Peter Max's studio in New York and a second certificate which they personally prepared with the image and name of the item.

5. 10 canvases of Peter Max art that were sold to me by the Debtors were forged.

6. The Certificates of Authenticity that accompanied the canvases that were allegedly issued by Peter Max's studio in New York were also forged.

7. The Certificates of Authenticity issued by the Debtors fraudulently represented that the art was original Peter Max art.

[1] Peter Max, ("Peter Max") is a world renowned living artist. He paints with vibrant colors. His original art is prized by collectors, who reasonably anticipate that it will substantially appreciate.

8. The Debtors personally and repeatedly represented to me that the art was original and genuine Peter Max art originated at the Peter Max art studio in New York.

9. I believed the representations by the Debtors because they had arranged a "meet and greet" event at their gallery for Peter Max and art collectors. I met Peter Max at this event I purchased my first large Peter Max canvas at this meet and greet event. It turns out that this canvas is the only original canvas with an original certificate among the 11 large canvases I purchased; the remainders were all counterfeit accompanied by forged certificates.

10. The Debtors conducted business through a store that was adorned by a sign that read "Max in the Grove" which clearly implied that it was a legitimate dealer in Peter Max art. The Majority of the canvases in the store purported to be Peter Max art and the Debtors advertised the gallery with business cards, posters and postcards portraying PETER MAX name and artworks. I also relied on the fact that Mr. Roberts was savvy in art having graduated from Julliard, New York's reputed Art College and had his diploma publicly exhibited in the gallery.

11. I was informed by a special agent of the FBI, Robert Giczy, that the art I acquired from the Debtors were, in fact, forgeries. I was also informed that the certificates of authenticity were also forgeries. I was informed that I

could not resell this art as genuine Peter Max art and that I should keep the 10 canvases as proof for the case N. 87-MM-113503 currently under investigation and where I am identified as a possible victim of a crime.

12. After being informed of this fact by the FBI, I independently researched this matter and confirmed that the associated Certificates of Authenticity to the 10 canvases were, in fact forged. This was also confirmed by Peter Max's studio in New York when the catalog numbers behind each canvas, were cross-checked. As part of my research I have learned how to independently determine whether Peter Max certificates are forged, and I rely not only on what I have been told by FBI agent Giczy and the Peter Max Studio in New York, but also on my independent research. There are three major differences between a genuine and a forged Certificate of Authenticity from the Peter Max Studio, and I have identified these differences in the certificates that I was given by the Debtors with my purchase of, what turns out to be forged art.

13. I confronted Debtor Leslie Howard Roberts Jr. about the fact that the art he sold me was forged. He did not deny this fact and offered to reimburse the purchase price plus the costs I had incurred in connection with this matter to date. He allegedly credited my account at American Express in the Amount

of $60,379.00. However, American expressed reversed the credit because it was against their corporate policy.

14. I have since discovered that both Debtors had been previously sued by another artist, Romero Britto, for engaging in a pattern of counterfeiting, forgery and deceit in connection with his work and that they were eventually permanently enjoined from counterfeiting his work. *See Britto Central, Inc., and Romero Britto v. Les Roberts, et. al.* Case No. 10-20527-CIV-Seitz/O'Sullivan (S.D. Fla.) (Injunction entered 9/28/2010). I have also learned that Leslie Roberts has been sued for selling a fake Britto painting and that a judgment has been entered against him in that matter.

15. My background research causes me to believe that Debtor Leslie Howard Roberts, Jr. is the same Leslie Howard Roberts that committed securities fraud in 1986 which included, among other things, the creation or use of false and fraudulent statements regarding equity trades allegedly made on clients' behalf and furnishing the false statements to their clients. The counterfeit statements were made to resemble real statements. The Leslie Howard Roberts in the criminal matter pled guilty and was sentenced to 15 years imprisonment. The Debtor Leslie Howard Roberts Jr. is the same age as the Leslie Howard Roberts that was charged in the criminal securities

fraud case. *See U.S. v. Leslie Howard Roberts* 86-8046-CR-Paine-SS, United States District Court for the Southern District of Florida.

16.Debtors personally assured me that the art I was purchasing was genuine and original Peter Max art.

17.I reasonably relied on the assurances of Debtors regarding the art I was purchasing.

18.I frequently went to the art gallery operated by the debtors. In review of the bankruptcy petition, schedule B paragraph 13 I observed a statement that there are signs posted at the gallery that the art located in the gallery is on consignment and is not owned by the debtors. The sign which he stated was posted at the gallery was not observed by me during any of the numerous times I went I went to the gallery. Leslie Howard Roberts Jr. knew that I would only purchase Peter Max art directly provided by the Peter Max office in New York or from Peter Max authorized dealers and galleries. He also knew that I insisted on both an original certificate of authenticity from the Peter Max studio in New York and from the art dealer from whom I purchased the art so that I could establish the provenance of the art I purchased.

19.The representations by the Debtors that the art I purchased was genuine original Peter Max art were untrue.

20. The representations by the Debtors that the art I purchased was genuine original Peter Max art were material to my decision to invest in the art that I purchased from the Debtors.

21. The representations by the Debtors that the art I purchased was genuine original Peter Max art were made with intent of defrauding me.

22. The representations by the Debtors that the art I purchased was genuine original Peter Max art were made with the intent of inducing my reliance on the representations.

23. My reliance on the fraudulent representations by the Debtors was reasonable.

24. My reasonable reliance on the fraudulent representations caused me financial injury.

**I, EDMUNDO GUGLIOTTA, HAVE READ THE FOREGOING AND I AFFIRM UNDER OATH AND UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE AND CORRECT.**

_______________________ 4/28/2013

Edmundo Gugliotta Date