U S BANKRUPTCY COURT
SO. DISTRICT OF FLORIDA
JUL 23 2014
RECEIVED

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
SOUTHERN DIVISION

IN RE:

Leslie Howard Roberts, Jr.
Silvia Castro Roberts,
Debtors.
_______________________/

CASE NO.: 11-39825 LMI
CHAPTER 7

Leslie Howard Roberts, Jr.

And Silvia Castro Roberts

Plaintiffs/Counter-defendants

v.

Edmundo Gugliotta

Defendant/Counter-plaintiff

___________________________/

Adv. Case No: 13-01140 LMI

**MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**AND**
**MOTION TO STRIKE AFFIDAVITS FILED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant/Counter-plaintiff/Creditor, Eduardo Gugliotta ("Creditor"), responds to the motion for summary judgment filed by Plaintiffs/ Counter-defendants/Debtors, Leslie Howard Roberts ("Roberts") and Sylvia Castro ("Castro") (Collectively "Debtors"), on the issue of dischargability of a claim for

damages for fraud in connection with the sale of forged art with forged certificates of authenticity and states:

## **General Background**

This is one of a series of cases against these Debtors for fraudulent dealings in art. Both Debtors were sued in Case Number 1:10-CV-20579-PAS, *Britto Central, Inc. et al vs. Les Roberts. Les Roberts Jr., Silvia Castro and Coral Gables Galleries, Inc.* for, inter alia, creating forged art and forged certificates of authenticity for the art. This suit ended with an injunction enjoining further frauds involving Britto.

The Debtors were also both sued in another adversary proceeding in this Court where again they were accused of willfully selling forged art and forged certificates of authenticity. Case No. 13-01141 LMI. That case ended, after a trial where the Creditor failed to appear, with an order granting dischargability.

Roberts had previously been criminally convicted following a 20 count indictment for fraud and conspiracy to commit fraud by creating forged securities transaction confirmations and forged monthly statements which he mailed to his customers to hide millions in losses and almost 2 million in unearned commissions in unauthorized trades. This multimillion dollar fraud resulted in a 15 year sentence in case number 86-8046-CR-Paine-SS USDC SDFL.

Indeed, there is little that is not fraudulent about Mr. Roberts. Even his college report card and related claimed credentials and degrees were fraudulent – he dropped out.

We can produce limited actual testimony about this because Mr. Roberts walked out of his deposition after taking the Fifth Amendment. Castro stayed for quite a while, but her testimony was no more helpful. She took the Fifth Amendment to every question as well. The fact that they were going to take the Fifth Amendment was stated in advance and in writing.

## I. Adverse inference is proper

In *Chase Manhattan Bank N.A. v. Frenville*, 67 Bankr. 858, 861-62 (D.N.J. 1986), the Court found that an adverse inference was proper in an objection to a discharge case under 11 U.S.C. 543 (1982) for refusing to testify. This is just a specific invocation in a proceeding that is identical to the one at bar of the general rule that adverse inferences are properly taken when a party to a civil action declines to testify on the basis of the Fifth Amendment. *See Baxter v. Palmigiano*, 425 U.S. 308 (1976). "Bankruptcy adversary proceedings are civil proceedings, an adverse inference may be drawn against a party when they refuse to testify." *In re Asbury*, 2011 Bankr. LEXIS 33, 2011 WL 44911 (Bankr. W.D. Mo. Jan. 6, 2011).

The Court may properly take an adverse inference against the Debtors based upon their invocation of the Fifth Amendment privilege against self-incrimination. The invocation of the Fifth Amendment privilege prevented the Creditor from discovering who actually created the forged art that was willfully sold by the Debtors. See deposition of Creditor[1], page 126 line 2 to page 127 line 1.

## II. There is competent evidence that the Debtors knowingly and intentionally orchestrated a scheme to defraud the Creditor

The Creditor's deposition was submitted by the Debtors in support of their motion even though it hardly support their claim that they should not be liable for their fraudulent conduct, forgery, and theft by trick. The Creditor testified in his deposition that he was given forged certificates by the Debtors. The Creditor testified that the certificate provided by the Debtors was on the exact same paper as the invoice that was produced by them, making it clear that the same party (the Debtors), created both documents. See deposition of Creditor, page 121 line 19 to page 122 line 11. This is clear evidence of a fraud that was planned and orchestrated in advance and not just a desperate attempt to cover up the accidental sale of forged artwork. This was not just a fraud, but a conspiracy to commit fraud.

Roberts misrepresented his credentials and his qualification as part of the orchestrated conspiracy to sell forged art. He claimed that he had 34 years'

[1] Filed by Debtors in support of motion for summary judgment.

experience in the art business and that he studied art at Julliard. See Creditors deposition, page 69 lines 2-23. In fact, Roberts dropped out of college and about half of the preceding 30 years were spent not in the art business but rather incarcerated for prior frauds. The Creditor reasonably relied upon the fraudulent credentials that were presented as a basis for trusting these flim flam artists.

Roberts told the Creditor that he obtained the canvases from the Peter Max Studio or from another reputable dealer. This turned out not to be the case. The Debtors were unable to produce any documents tracing the provenance of the canvases which the Creditor purchased based upon the representation by the Debtors that these were original Peter Max art works obtained from Max Studios in NY and (in a couple of cases) from a reputable art dealer in Tampa. The Creditor relied upon the intentionally false and fraudulent representations by the Debtors to purchase these purportedly genuine original art pieces. See deposition of Creditor, page 31 line 23 to page 36 line 24 (discussing the importance of provenance and the process of purchasing the art in question); page 48 line 17 to page 50 line 5 (discussing the representation made regarding the origin of each canvas).

To be absolutely clear: the purchases were made based upon the assurances of Roberts that these were original canvases created by the artist, Peter Max, personally:

> Q. So those 11 [canvases] you understood to be originals made by the artist himself, right?
> A. That I understood?
> Q. You were under the impression they were?
> A. I was under the assurance that they were.
> Q. Who assured you of that?
> A. Les Roberts, the owner of the gallery.
> Q. And in all 11 of those instances were there certificates of authenticity or certificates of origin or whatever you want to call it that were associated with each and every one of them?
> A. I got some papers that were supposed to be, yes.
> Q. You got them before, during or after the purchase?
> A. Usually it was after.
> Q. So you purchased them without that document?
> [objection omitted]
> A. Well, yes, because according to Mr. Les Roberts it took sometime for the office, studio or from Max to send them via mail or via Fed Ex or whatever. So there was a span of time between the actual purchase of the art piece and the receipt of the certificate.

Deposition of Creditor, page 36 line 24 through page 37 line 24.

These assurances, sadly, proved to be false and fraudulent. Indeed, the Creditor learned that he was a victim of a fraud when an agent of the FBI came to his home to inspect the paintings that were purchased from the Debtors and informed him that the paintings and the certificates of authenticity were forgeries. This fact was later confirmed by Max Studios in New York. See Creditors deposition, page 54 line 1 – 18.

Simply put, a man and his wife, with a lengthy history of committing frauds, sold the Creditor artwork that they promised was genuine and purchased from the artist directly or through another reputable gallery. The Creditor's reliance on their

representations was reasonable; however, their reliance on these representations turns out to have been misplaced because the Debtors were not reputable art dealers with a degree in art from a leading college and 34 years of experience in the sale of art. Rather Roberts was a college dropout who spent a substantial portion of his adult life in jail for fraud and who, after his release, teamed up with Castro to defraud innocent art collectors through a scheme of selling counterfeit and forged art accompanied by counterfeit and forged certificates of authenticity. The fresh start in bankruptcy is not designed to give a debtor a fresh start from such willful, intentional, and egregious wrongs.

The cherry-picked statements from a deposition and the unsupported conclusions reached therefrom by the Debtors in their memorandum cannot vitiate the clear and unambiguous facts, supported by record evidence, that the Debtors made knowingly false statements to the Creditor with the intent that the Creditor rely upon them and that the Creditor did rely on them to his detriment. These were statements not only about the genuineness of the art but also the provenance of the art and the qualifications of the Debtors, themselves, to be engaged in this business of selling art. Without the assurances by the Debtors, there never would have been the sale of the art it issue.

In *Marrama v. Citizens Bank of Mass*, 445 F3d 518, 522 (1st Cir. 2006), the Court stated that summary judgment on an objection to discharge is warranted (in

the Creditors favor) where, as here, the evidence leaves no plausible conclusion but that the debtors intent was fraudulent. The only plausible explanation here is that the Debtors had a fraudulent intent. Therefore not only should the Debtors' motion for summary judgment be denied, but, on a proper motion, summary judgment should be entered on the Creditor's behalf.

The unpublished opinion of *First Nat'l Bank, Larned v. Davison (In re Davison)*, 2004 Bankr. LEXIS 848, 2004 WL 2852352, (10th Cir. BAP June 29, 2004) has some bearing here as well. Since the debtors asserted the Fifth Amendment during their deposition, they are barred from offering any evidence to refute the Creditor's claim. Therefore the Creditor's claim should be credited even if it is only supported by circumstantial evidence.

## **MOTION TO STRIKE DEBTOR'S AFFIDAVITS**

The Fifth Amendment cannot be used as a sword and a shield. A person cannot hide behind an invocation of the Fifth Amendment and then submit testimony that is supportive of his position. See, e.g. *United States v. Nobles*, 422 U.S. 225 (1975). The stereotypical example of the sword and shield doctrine is precisely what is occurring here, hiding behind the Fifth Amendment when discovery is attempted, then trying to introduce favorable testimony by affidavit in response to a summary judgment motion. The appropriate remedy under the sword and shield doctrine is to

strike the affidavit. *Barker v. Int'l Union of Operating Eng'rs Local*, 150, 2011 U.S. Dist. LEXIS 145458 (N.D. IL 2011). See also *Laborers' Pension Fund v. Surface Dimensions, Inc.*, No. 07 C 3860, 2011 U.S. Dist. LEXIS 23229, 2011 WL 841515 (N.D. Ill. Mar. 8, 2011) ("The court may strike an affidavit (or paragraphs thereof) in support of or in opposition to a motion for summary judgment when the affidavit seeks to establish facts about which the affiant refused to testify pursuant to the Fifth Amendment privilege against self-incrimination."). Such an affidavit is not properly considered for summary judgment purposes because the Fifth Amendment privilege "cannot be invoked as a shield to oppose depositions while discarding it for the limited purpose of making statements to support [or oppose] a summary judgment motion."

WHEREFORE, the Creditor, Mr. Gugliotta, asks this Court to strike the Debtors' affidavits and deny the Debtors' motion for summary judgment.

Respectfully Submitted,

By__________________________

Dirk Lorenzen, Esq.
Florida Bar No. 821276
150 Alhambra Circle, Suite 1220
Coral Gables, Florida 33134
(305) 447-1203
(305) 447-1272 (facsimile)
dirk@lorenzenlaw.com
eservice@lorenzenlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished by email to **Mark S. Steinberg, Esq.**, at **mss@steinberglawoffices.com** and **mss25@juno.com,** on this 22nd day of July, 2014.

**Dirk Lorenzen, Esq.**